United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LLOYD B.,<br><br>               Plaintiff,<br><br>      v.<br><br>ANDREW SAUL,<br><br>               Defendant. | Case No.  19-cv-07717-DMR<br><br>**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 13, 14 |

Plaintiff Lloyd B. moves for summary judgment to reverse the Commissioner of the Social Security Administration's (the "Commissioner's") final administrative decision, which found Plaintiff not disabled and therefore denied him application for benefits under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq*.  [Docket Nos. 13 ("Pltf. Mot."), 17 ("Reply").]   The Commissioner cross-moves to affirm.  [Docket No. 14 ("Def. Mot.").]  For the reasons stated below, the court grants Plaintiff's motion, denies the Commissioner's cross-motion, and remands the case for further administrative proceedings.

## I.    PROCEDURAL HISTORY

Plaintiff filed an application for Social Security Disability Insurance ("SSDI") benefits on January 29, 2016, alleging a disability onset date of April 9, 2012.  Administrative Record ("A.R.") 172-75.  The application was initially denied on September 1, 2016 and again on reconsideration on November 17, 2016.  A.R. 108-11, 113-17.  An Administrative Law Judge ("ALJ") held a hearing on January 5, 2018 and issued an unfavorable decision on October 17, 2018.  A.R. 12-29.  The ALJ determined that Plaintiff has the following severe impairments: tinnitus of both ears; multiple pelvic fractures; mild degenerative joint disease of the left hip with osteophytosis; degenerative joint disease of the right hip with joint space narrowing osteophytosis; mild degenerative changes of the lumbar spine, including mild L4-L5 borderline L3-L4 level central stenosis; mild degeneration of

the thoracic spine; and mild to severe conductive hearing loss, worse in the right than left.  A.R. 17.

The ALJ found that Plaintiff retains the following residual functional capacity (RFC):

> [T]o perform sedentary work as defined in 20 CFR 404.1567(a) except the individual is able to frequently lift/carry 10 pounds and occasionally lift/carry 20 pounds; sit for up to 6 hours (stand for 5 minutes after every hour of sitting during which time the person would be off task), stand or walk 2 hours in an 8-hour workday with normal breaks; the individual should never climb ladders, ropes or scaffolds; able to occasionally climb ramps/stairs; the individual can occasionally stoop, kneel, balance and rarely crawl, crouch, and kneel; and no work with dangerous machinery.

A.R. 18.  Relying on the opinion of a vocational expert ("V.E.") who testified that an individual with such an RFC could perform other jobs existing in the economy, including working as a document preparer, addresser, and stuffer, the ALJ concluded that Plaintiff is not disabled.

After the Appeals Council denied review, Plaintiff sought review in this court pursuant to 42 U.S.C. § 405(g).

## II.     STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits.  "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).  Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a mere scintilla, but less than a preponderance.  *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir.1996) (internal citation omitted).  When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citation and quotation marks omitted).

If the evidence reasonably could support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).  "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was

United States District Court
Northern District of California

1    inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035,

2    1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

3        The court has read and considered the entire record in this case.  For the purposes of brevity,

4    the court cites only the facts that are relevant to its decision.

5    **III.    DISCUSSION**

6        Plaintiff argues that the ALJ erred (1) in assigning too little weight to the opinion of his

7    treating orthopedic physician, Eric Fulkerson, M.D., and (2) in discounting Plaintiff's subjective

8    pain testimony.

9        **A.    Weighing of the Medical Opinions**

10           **1.    Legal Standard**

11       Courts employ a hierarchy of deference to medical opinions based on the relation of the

12   doctor to the patient.  Namely, courts distinguish between three types of physicians: those who

13   treat the claimant ("treating physicians") and two categories of "nontreating physicians," those

14   who examine but do not treat the claimant ("examining physicians") and those who neither

15   examine nor treat the claimant ("non-examining physicians").  *See Lester v. Chater*, 81 F.3d 821,

16   830 (9th Cir. 1995).  A treating physician's opinion is entitled to more weight than an examining

17   physician's opinion, and an examining physician's opinion is entitled to more weight than a non-

18   examining physician's opinion.  Id.

19       The Social Security Act tasks the ALJ with determining credibility of medical testimony and

20   resolving conflicting evidence and ambiguities.  *Reddick*, 157 F.3d at 722.  A treating physician's

21   opinion, while entitled to more weight, is not necessarily conclusive.  *Magallanes v. Bowen*, 881

22   F.2d 747, 751 (9th Cir. 1989) (citation omitted).  To reject the opinion of an uncontradicted treating

23   physician, an ALJ must provide "clear and convincing reasons."  *Lester*, 81 F.3d at 830; *see, e.g.*,

24   *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995) (affirming rejection of examining

25   psychologist's functional assessment which conflicted with his own written report and test results);

26   see also 20 C.F.R. § 416.927(d)(2); SSR 96-2p, 1996 WL 374188 (July 2, 1996).  If another doctor

27   contradicts a treating physician, the ALJ must provide "specific and legitimate reasons" supported

28   by substantial evidence to discount the treating physician's opinion.  *Lester*, 81 F.3d at 830.  The

United States District Court
Northern District of California

3

ALJ meets this burden "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick*, 157 F.3d at 725 (citation omitted). "[B]road and vague" reasons do not suffice. *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989). This same standard applies to the rejection of an examining physician's opinion as well. *Lester*, 81 F.3d at 830-31. A non-examining physician's opinion alone cannot constitute substantial evidence to reject the opinion of an examining or treating physician, *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984), though a non-examining physician's opinion may be persuasive when supported by other factors. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (noting that opinion by "non-examining medical expert . . . may constitute substantial evidence when it is consistent with other independent evidence in the record"); *Magallanes*, 881 F.2d at 751-55 (upholding rejection of treating physician's opinion given contradictory laboratory test results, reports from examining physicians, and testimony from claimant). An ALJ "may reject the opinion of a non-examining physician by reference to specific evidence in the medical record." *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998). An opinion that is more consistent with the record as a whole generally carries more persuasiveness. *See* 20 C.F.R. § 416.927(c)(4).

### 2.   Analysis

On April 9, 2012, Plaintiff suffered injuries after falling approximately 25 feet down an elevator shaft. A.R. 285-86. A CT scan of his pelvis revealed a posterior sacral fracture on the left hemisacrum and superior and inferior pubic rami fractures on the left side. A.R. 286. He was diagnosed with a pelvic ring injury. A.R. 288. On April 11, 2012, orthopedic physician Dr. Eric Fulkerson treated the pelvic ring injury with anterior, external fixation and left iliosacral screw insertion. A.R. 290.

After the operation, Dr. Fulkerson continued to treat Plaintiff through October 2014. A.R. 449-549. At the six-week post-op examination, Plaintiff told Dr. Fulkerson that he had throbbing bilateral deep hip pain for 1-2 weeks with increased difficulty sleeping and getting out of bed. A.R. 516. He also reported his back occasionally "locks up" after his injury. A.R. 516. He had been taking Norco for the pain, but the medications did not seem to work very well for the past week or

United States District Court
Northern District of California

two.  A.R. 516.  Dr. Fulkerson noted that X-ray imaging showed additional healing of Plaintiff's pubic and sacral fractures, but he prescribed Percocet based on Plaintiff's complaints of increased pain.  A.R. 516.  Over the next several months, Dr. Fulkerson continued to record abnormal findings, including decreased hip flexion due to pain, muscle tightness, an antalgic gait, decreased mobility, and significant spasms in Plaintiff's lower back.  A.R. 449, 456, 516.  An MRI of Plaintiff's lumbar spine taken June 20, 2012 revealed mild to moderate abnormalities, but he was not recommended for spinal surgery.  A.R. 355-56, 457.

Plaintiff attempted to return to his previous work on October 15, 2012 with work limitations, including working no more than 2 hours a day; no prolonged bending, lifting, or squatting; and frequent position changes every 15 minutes.  A.R. 449.  Within days of returning to work, Plaintiff experienced "significant functional difficulties particularly with any long periods of standing, sitting or walking."  A.R. 532.  Dr. Fulkerson noted that Plaintiff still walked with an antalgic gait and appeared uncomfortable while sitting.  A.R. 532.  He recommended that Plaintiff continue physical therapy and connect with pain management for consideration of epidural injections.  A.R. 532.  He also extended Plaintiff's estimated return to work date for two months.  A.R. 532.  On November 29, 2012, Dr. Fulkerson again extended Plaintiff's estimated return to work date for another month (to January 30, 2013) to allow for injections and continued physical therapy.  A.R. 537.  However, on January 10, 2013, Dr. Fulkerson wrote that he "[did] not think [Plaintiff] will be able to return to his full-work duties" and "due to his difficulty with sitting, standing, or performing any physical activity for an extended period of time, he is unable to perform any significant work duties."  A.R. 509.

Plaintiff received an epidural steroid injection on January 15, 2013 and had significant improvement in his symptoms, with decreased sensation of numbness and tingling down his left lower extremity.  A.R. 511, 543.  However, his symptoms began to recur in about a month.  A.R. 543.  He planned to follow up with another injection and continue physical therapy but Dr. Fulkerson noted that given Plaintiff's current progression, it would "be some time before [Plaintiff] is able to return to work duties as he was unable to tolerate even limited duties previously."  A.R. 544.  On May 31, 2013, Plaintiff told Dr. Fulkerson that his back pain persists and that he was scheduled for

United States District Court
Northern District of California

1    another lumbar injection. A.R. 463. Dr. Fulkerson opined that "[g]iven [Plaintiff's] persistent

2    symptoms and high-energy nature of his injury, there is significant probability that he will have

3    long-term residual disability . . . ." A.R. 463.

4          In August 2013, Plaintiff again told Dr. Fulkerson that he was interested in returning to work

5    on a limited duty basis. A.R. 538. Dr. Fulkerson approved limited duty with work restrictions,

6    including working only four hours a day, four days a week, to allow for ongoing physical therapy;

7    no lifting over 25 pounds; no prolonged bending, lifting, stooping, squatting; and frequent position

8    changes of 10 minutes every hour. A.R. 452, 483. However, no limited duty work was available at

9    Plaintiff's prior employment at that time. A.R. 452. Subsequent evaluations continued to show

10   pain, back spasms, and an antalgic gait. A.R. 451, 493, 534. By January 8, 2014, Plaintiff planned

11   to proceed with modified work duty, which would include lifting less than 20lbs and working no

12   more than four hours per day, four days a week. A.R. 493. Throughout the remainder of his

13   treatment by Dr. Fulkerson, Plaintiff continued to experience significant pain and back spasms. A.R.

14   513, 515, 520, 523, 528, 533. In October 2014, Dr. Fulkerson wrote that Plaintiff "unfortunately

15   has no significant improvement" despite maintaining his medication regimen of anti-inflammatories

16   and occasionally Norco, as well as home exercises. A.R. 533. Dr. Fulkerson planned to refer him

17   for repeated steroid injections but noted that "this may be a temporary measure." A.R. 533.

18         The ALJ assigned partial weight to Dr. Fulkerson's various opinions on Plaintiff's work-

19   related limitations. A.R. 22. With respect to Dr. Fulkerson's August 2013 restrictions, the ALJ said

20   that the lifting, bending, stooping, squatting, and frequent position changes were all accounted for

21   in the assessed RFC. A.R. 21. The ALJ did not credit the limitation restricting Plaintiff to working

22   only four hours a day because "subsequent records do[] not support such restrictive limitations."

23   A.R. 21. The ALJ also stated that although Dr. Fulkerson's records showed that Plaintiff had

24   "significant limitations," there was also "increased functionality over time . . . to the point where

25   [Plaintiff] is now capable of performing a restrictive range of light work." A.R. 22. Because Dr.

26   Fulkerson's opinions are contradicted by the opinions of other physicians in the record, all of whom

27   assigned less restrictive limitations, the ALJ was required to provide "specific and legitimate

28   reasons" supported by substantial evidence to discount Dr. Fulkerson's opinions. *Lester*, 81 F.3d at

830.

Plaintiff argues that the ALJ erred in assigning too little weight to Dr. Fulkerson's opinions because the ALJ did not actually include all the restrictions in the portions of Dr. Fulkerson's opinions the ALJ purported to accept.  Specifically, on August 9, 2013, Dr. Fulkerson approved Plaintiff returning to modified duty with some limitations, including "[f]requent position change 10 min per 1 hrs."  A.R. 483.  The ALJ stated that he "accounted for" this limitation on position changes in the RFC he assessed.  *See* A.R. 21 ("[F]requent position changes, 10 minutes per 1 hour, . . . is accounted for in the above residual functional capacity.").  The ALJ's representation is confusing because the RFC actually limits Plaintiff to standing for 5 minutes per hour instead of the 10 minutes in Dr. Fulkerson's opinion.  A.R. 18.  Since the ALJ did not provide any reason to reject Dr. Fulkerson's opinion about the amount of time Plaintiff would need to make postural changes, the ALJ's failure to account for this discrepancy was an error.  Nor does the error appear to be harmless. In discussing the position change limitation during the hearing, the VE stated that "[t]he limit I use is about 48 minutes," referring to the total amount of time in a day someone could be off-task for postural changes and still perform the identified jobs.  *See* A.R. 68-69.  While the ALJ's limitation of 5 minutes per hour falls under this limit (40 minutes in an 8-hour workday), Dr. Fulkerson's limitation of 10 minutes per hour would not (80 minutes in an 8-hour workday).  Thus, if the ALJ had actually accounted for Dr. Fulkerson's limitation regarding postural changes, Plaintiff would be precluded from performing the jobs identified by the VE.  The ALJ's unexplained failure to credit Dr. Fulkerson's opinion on this point is therefore not harmless.

Plaintiff also argues that the ALJ purported to reject Dr. Fulkerson's opinions on the basis that Plaintiff's conditions improved over time but the ALJ did not identify any clinical findings showing improvement.  The ALJ's reasoning on this point is somewhat convoluted.  In support of his finding that Plaintiff had "increased functionality over time," the ALJ cited to the medical opinions of consultative examiner Calvin Pon, M.D. and worker's compensation examiner Khosrow Tabaddor, M.D.  *See* A.R. 22.  However, the ALJ did not identify any specific portions of those opinions that indicate increased functionality, such as greater muscle strength, better range of motion, decreased spasms, or better tolerance for physical activity.  Instead, it appears that the ALJ

United States District Court
Northern District of California

1   used the less restrictive RFC in those opinions as evidence of increased functioning.  This reasoning

2   is circular because the ALJ then credited Dr. Pon's and Dr. Tabaddor's opinions on the basis that

3   they are consistent with the evidence of increased functionality.[1]  *See* A.R. 22.  Because the ALJ did

4   not identify any evidence showing that Plaintiff's functionality increased over time, he did not offer

5   specific and legitimate reasons to reject Dr. Fulkerson's opinions.

6       For these reasons, the ALJ erred in partially discounting Dr. Fulkerson's opinions.

7   **B.    Credibility**

8       **1.    Legal Standard**

9       In general, credibility determinations are the province of the ALJ.  "It is the ALJ's role to

10  resolve evidentiary conflicts.  If there is more than one rational interpretation of the evidence, the

11  ALJ's conclusion must be upheld."  *Allen v. Sec'y of Health & Human Servs*., 726 F.2d 1470, 1473

12  (9th Cir. 1984) (citations omitted).  An ALJ is not "required to believe every allegation of disabling

13  pain" or other nonexertional impairment.  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989) (citing

14  42 U.S.C. § 423(d)(5)(A)).   However, if an ALJ discredits a claimant's subjective symptom

15  testimony, the ALJ must articulate specific reasons for doing so.  *Greger v. Barnhart*, 464 F.3d 968,

16  972 (9th Cir. 2006).  In evaluating a claimant's credibility, the ALJ cannot rely on general findings,

17  but "must specifically identify what testimony is credible and what evidence undermines the

18  claimant's complaints."  *Id*. at 972 (quotations omitted); *see also Thomas v. Barnhart*, 278 F.3d 947,

19  958 (9th Cir. 2002) (stating that an ALJ must articulate reasons that are "sufficiently specific to

20  permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony").  The

21

22  [1] In his motion, the Commissioner asserts that Dr. Fulkerson's own progress reports record
23  improvement.  Def. Mot. at 9.  The only record he cites in support of that statement is a medical
    record dated May 31, 2013 in which Dr. Fulkerson acknowledges that Plaintiff's hip stiffness has
24  improved.  *See* A.R. 463.  However, that record also states that Plaintiff's "back pain persists" and
    that he continues to need lumbar injections for the pain. A.R. 463.  Dr. Fulkerson also wrote, "Given
25  [Plaintiff's] persistent symptoms and [the] high-energy nature of his injury, there is a significant
    probability that he will have long-term residual disability . . . ." A.R. 463.  Thus, this record is not
26  evidence of significant improvement.  In any case, the ALJ did not actually cite this record as
    evidence of improvement, and so the Commissioner's argument is impermissible post-hoc
27  rationalization.  *See Bray v. Comm'r of Soc. Sec. Admin*., 554 F.3d 1219, 1225-26 (9th Cir. 2009)
    ("Long-standing principles of administrative law require [this court] to review the ALJ's decision
28  based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that
    attempt to intuit what the adjudicator may have been thinking." (citation omitted)).

ALJ may consider "ordinary techniques of credibility evaluation," including the claimant's reputation for truthfulness and inconsistencies in testimony, and may also consider a claimant's daily activities, and "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

The determination of whether or not to accept a claimant's testimony regarding subjective symptoms requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281 (citations omitted). First, the ALJ must determine whether or not there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms "based solely on a lack of objective medical evidence to fully corroborate the alleged severity of" the symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc) (citation omitted). Absent affirmative evidence that the claimant is malingering, the ALJ must provide "specific, clear and convincing" reasons for rejecting the claimant's testimony. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The Ninth Circuit has reaffirmed the "specific, clear and convincing" standard applicable to review of an ALJ's decision to reject a claimant's testimony. *See Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014).

### 2.     Analysis

The ALJ partially discredited Plaintiff's testimony on the grounds that (1) Plaintiff reported that he is able to lift heavy things; (2) Plaintiff has been working as a Lyft driver on a part-time basis; (3) Plaintiff was denied pain management because he failed to complete physical therapy; and (4) Plaintiff's MRIs and x-rays show only mild to moderate degenerative changes. A.R. 19.

With respect to the first reason, the ALJ did not cite any testimony or record in which Plaintiff reported being able to lift heavy things following his injury. In the hearing, Plaintiff testified that he sometimes must lift bags and other luggage while he is driving for Lyft. A.R. 38. However, he clarified that he lifts at most 10 to 20 pounds at a time and "if it's too heavy, I ask [the passenger] to do it." A.R. 38. Plaintiff's reported lifting limitations are supported throughout the record. *See* A.R. 203, 204, 449, 493, 510, 559. Thus, the ALJ's vague reference to "heavy" lifting

1    is not a clear and convincing reason to discredit Plaintiff's pain testimony.

2          Second, the ALJ cited Plaintiff's part-time work driving for Lyft as a reason to discredit his

3    pain testimony.  A.R. 19.  However, Plaintiff testified that he only drives for two to three hours a

4    day, depending on his level of pain.  A.R. 35.  He starts early in the morning to "limit [his] exposure

5    to traffic" so that he does not have to drive for long periods of time.  A.R. 35.  Most of his rides are

6    between one and ten miles long.  A.R. 36.  He can choose when he starts and stops working.  A.R.

7    36.  Even with limited driving, his pain increases throughout the day until he "literally . . . can't take

8    it anymore" and has to go home to lay down or use his inversion table.  A.R. 45.  On a typical day,

9    his pain starts at about 2-4 on a scale of 10 and by the time he drives for two or three hours, his pain

10   reaches 8-10 out of 10.  A.R. 45-46.  The ALJ did not explain how Plaintiff's testimony that he

11   drives two to three hours per day with increasing pain is inconsistent with any of Plaintiff's reported

12   limitations.  The ALJ also did not explain how Plaintiff's part-time driving work, for which he can

13   choose his own hours and stop at will, indicates that he would be able to transition to full-time,

14   scheduled employment.  Accordingly, Plaintiff's work for Lyft is not a clear and convincing reason

15   to discredit his pain testimony.

16         Third, the ALJ points out that Plaintiff was twice denied pain management on the basis that

17   he had not been doing physical therapy.  A.R. 19; *see* A.R. 648, 657.  Plaintiff completed extensive

18   physical therapy shortly after his injury in April 2012.  By April 2013, Plaintiff had completed 24

19   physical therapy sessions.  A.R. 416.  At that time, he felt that he had "hit a plateau" in regard to

20   pain on his left side and experienced only short-term relief after physical therapy.  A.R. 416.  He

21   also continued to have significant restrictions in his activities of daily living, as he was limited to

22   sitting for 30 minutes to 1 hour at a time, could walk for 30 minutes, and had a very difficult time

23   using stairs.  A.R. 416.  His range of motion in his lumbar spine had improved only 5% since his

24   initial evaluation.  A.R. 416.  Plaintiff completed at least 11 more physical therapy sessions by

25   November 2013.  A.R. 432.  At the final recorded session on November 8, 2013, he reported his

26   pain level at a 7-8/10 and was "unable to tolerate exercises/stretches" due to "high pain levels."

27   A.R. 432.  The record shows that Plaintiff continued with physical therapy through at least June 20,

28   2014.  A.R. 520.  On June 22, 2017, Plaintiff was referred to physical therapy again.  A.R. 637.  He

United States District Court
Northern District of California

1   did not show up for a scheduled session on July 24, 2017.  A.R. 639.  He was later referred to pain

2   management but was denied in October 2017 because he was not in physical therapy.  A.R. 648.

3   He was denied a pain consult again in November 2017 on the same basis.  A.R. 657.  Plaintiff

4   successfully restarted physical therapy in December 2017, although he completed only two sessions

5   before the hearing on January 5, 2018.  A.R. 19, 683.

6           The Ninth Circuit has held that, in assessing a claimant's credibility, an ALJ may consider

7   "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of

8   treatment."  *Smolen*, 80 F.3d at 1284.  A claimant's statements "may be less credible if the level or

9   frequency of treatment is inconsistent with the level of complaints, or if the medical reports or

10  records show that the individual is not following the treatment as prescribed and there are no good

11  reasons for this failure."  SSR 96-7p; *see also Molina*, 674 F.3d at 1113 (holding that the ALJ did

12  not err in discounting a claimant's credibility where there was "no medical evidence that [the

13  claimant's] resistance was attributable to her mental impairment than her own personal preference").

14          In this case, the record shows that Plaintiff was referred to re-start physical therapy in August

15  2017 but he did not resume his sessions until December 2017.  A.R. 644, 683.  However, the record

16  as a whole does not support the ALJ's conclusion that Plaintiff inexplicably failed to seek treatment

17  for his conditions.  Plaintiff successfully enrolled in physical therapy for at least two years following

18  his injury despite limited improvement and continued high levels of pain.  A.R. 432, 450.  By

19  October 2014, he reported that he was still doing home exercises but "unfortunately has no

20  significant improvement."  A.R. 533.  The most recent evidence from 2017 show that Plaintiff

21  sought and received numerous medical treatments, including repeated epidural injections, a

22  lumbosacral support, opioid pain relievers, and medications to treat spasms and inflammation.  A.R.

23  40, 637, 640, 669.  While Plaintiff's failure to seek *any* medical treatment might be a reason to

24  discredit his reported pain symptoms, his delay in seeking a specific treatment is not, given that he

25  received other significant treatments in the interim and had marginal results with physical therapy

26  in the past.  Accordingly, Plaintiff's delay in re-starting physical therapy is not a clear and

27  convincing reason to discredit his subjective pain testimony.

28

United States District Court
Northern District of California

1    Finally, the ALJ stated that Plaintiff's MRI and x-ray results show only "mild to moderate

2  degenerative changes," which is inconsistent with his reported pain levels.  A.R. 19.  The ALJ is

3  correct that the imaging results generally showed mild to moderate abnormalities.  *See* A.R. 355-

4  56, 457, 621, 624, 627, 631, 637, 648.  However, an ALJ may not discredit a claimant's testimony

5  solely on the basis that the claimant's reported symptoms suggest more impairment than shown by

6  objective medical findings.  *See* 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements

7  about the intensity and persistence of your pain or other symptoms or about the effect your

8  symptoms have on your ability to work solely because the available objective medical evidence does

9  not substantiate your statements.").  Because the court already rejected the ALJ's other reasons to

10  discredit Plaintiff's testimony, the severity of Plaintiff's symptoms compared to the mild to

11  moderate abnormalities found in his imaging results is not a clear and convincing reason on its own

12  to reject Plaintiff's subjective pain testimony.

13    Accordingly, the ALJ erred in making a partially adverse credibility finding.

14  **IV.   CONCLUSION**

15    For the reasons stated above, Plaintiff's motion for summary judgment is granted.  The Clerk

16  shall enter judgment for Plaintiff and against the Commissioner and remand this case for further

17  proceedings.

18

19

20

21    **IT IS SO ORDERED.**

22  Dated: April 27, 2021

23



Donna M. Ryu
United States Magistrate Judge

24

25

26

27

28

United States District Court
Northern District of California